UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-286-KKC

TAMMY SANDERS,                                                                                       PLAINTIFF,

V.            **MAGISTRATE JUDGE'S REPORT**
                    **AND RECOMMENDATION**

JO ANNE B. BARNHART,
Commissioner of Social Security,                                                         DEFENDANT.

## I.  INTRODUCTION

Plaintiff, Tammy Sanders, has brought this action under 42 U.S.C. § 405(g) to challenge a final decision of the Defendant Commissioner denying Plaintiff's application for a period of Supplemental Security Income benefits.  This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it will be recommended that Plaintiff's motion for summary judgment be denied, Defendant's motion for summary judgment be granted and Judgment entered affirming the final decision of the Defendant Commissioner.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her application for Supplemental Security Income on June 24, 2002 (Tr. 73-76), which was denied initially on August 26, 2002 (Tr. 53), and on reconsideration on December 13, 2002 (Tr. 54). Plaintiff appeared before Administrative Law Judge James D. Kemper, Jr. (hereinafter "ALJ") on August 21, 2003, where Plaintiff, accompanied by an attorney, testified. (Tr. 32-52.) Melissa Glannon, a vocational expert (hereinafter "VE"), also testified at the hearing. (Tr. 49-51.)

Plaintiff was thirty-eight (38) years old at the time of the hearing decision. (Tr. 16.) She has an eighth grade education. (Tr. 33.) Her past relevant work experience consists of work as a cashier. (Tr. 16.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2002, the alleged onset date. (Tr. 21.)

On October 31, 2003, the ALJ issued his decision finding Plaintiff not disabled. (Tr. 15-23.) The ALJ determined that Plaintiff was unable to perform her past relevant work as a cashier. (Tr. 22.) The ALJ also found that Plaintiff suffered from polysubstance disorder and substance-induced mood disorder, impairments which he classified as severe. (Tr. 17.) Nevertheless, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a significant range of medium work, as identified by the VE and within the framework of the Medical-Vocational Guidelines.

(Tr. 21.) Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process. The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on July 21, 2004. (Tr. 6-8.) Plaintiff thereafter filed this action and the parties' motions for summary judgment (Record Nos. 9 and 10) are now ripe for review.

### III. ANALYSIS

#### A. General Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence. 42 U.S.C. § 405(g); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1368-1369 (6th Cir. 1991). "Substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a

3

decision the other way." Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).  The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987).  Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility."  Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

  B.  Plaintiff's Contentions on Appeal and Analysis

  Plaintiff's sole claim of error is that the ALJ erred by "acting as his own medical expert." (Record No. 9, Memorandum in Support, p. 3.)  Plaintiff contends that the mental residual functional capacity assessment executed on December 10, 2002, by a state agency medical consultant was incomplete.  (Id. at p.4.)  Plaintiff argues that the state's consultant was unaware of the "Emergency Department Behavioral Health Assessment" included in Plaintiff's medical records, which

indicated that in March 2001, Plaintiff presented a threat to herself and/or others as a result of her mental illness. (Id.) Plaintiff asserts that by adopting the state agent's evaluation, which was based on incomplete information, the ALJ "played doctor," substituting his own judgment in place of objective medical evidence. (Id.) Plaintiff concludes that the ALJ's actions constitute reversible error. (Id.)

In response, the Commissioner asserts that the ALJ did not act as his own medical expert, but rather relied upon the state agency medical consultants to "translate the treatment records into vocationally relevant terms." (Record No. 10, Memorandum in Support, p. 5.) Furthermore, the Commissioner contends that the record in question, the "Emergency Behavioral Health Assessment," was part of a report resulting from Plaintiff's involuntary admission to the hospital in March 2001, almost a full year before Plaintiff's alleged onset date of disability. (Id. at pp. 6-7.) As a result, the Commissioner argues, the report does not relate to the relevant period of time in this case. (Id.) Finally, the Commissioner concludes that the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence. (Id. at p. 9.)

In this case, Plaintiff initially alleged disability due to left hip and lower back pain, hepatitis C, chronic fatigue, diabetes, enlarged thyroids, and nerve problems. (Tr. 16.) The alleged onset date of disability was February 1, 2002. (Id.) Upon

reviewing the medical records, the ALJ noted that there was absolutely no evidence that Plaintiff had been diagnosed with either diabetes or hepatitis C. (Tr. 17.) Furthermore, Plaintiff had not received any treatment for her alleged hip or back pain since August 2001, well before her alleged onset date. (Id.) The ALJ did conclude, however, that the medical records supported Plaintiff's mental health complaints and found that she suffered from severe impairments of polysubstance dependence and a substance-induced mood disorder. (Id.)

Two separate mental residual functional capacity evaluations were completed on August 20, 2002, and December 10, 2002, by state agency consultants. (Tr. 159-175; 178-195.) In each instance, the consultants concluded that Plaintiff's mental health impairments resulted in no more than a moderate limitation in five areas of functioning. (Tr. 159-161; 192-194.) The ALJ included these non-exertional limitations in his hypothetical to the VE during the administrative hearing. (Tr. 49-50.) Taking these non-exertional limitations into consideration, the VE concluded that medium-, light-, and sedentary-level work existed in the national and regional economies that Plaintiff could perform. (Tr. 50.) The ALJ relied, in part, on the VE's testimony when determining that Plaintiff was not disabled. (Tr. 21.)

Given that Plaintiff's March 2001 "Emergency Behavioral Health Assessment" was not submitted as evidence until July 2003 (Tr. 212-214), Plaintiff is correct in

6

asserting that the state agency consultants could not have considered this information at the time of their residual functional capacity evaluations. The ALJ, however, had the benefit of this record prior to both the administrative hearing on August 21, 2003, and his administrative decision, dated October 31, 2003. Although the ALJ did not specifically address this single piece of evidence in his decision, it is assumed that it was given appropriate consideration. (Tr. 22, Finding No. 5.)

Plaintiff bears the burden on appeal to the district court to show that the administrative decision was in error. Scharlow v. Schweiker, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 1981); Brooks v. Sullivan, 766 F.Supp. 584, 588 (N.D. Ill. 1991). This burden on appeal stems from the overall burden Plaintiff bears to prove disability at all stages of the administrative proceedings. Scharlow, 655 F.2d at 648; Brooks, 766 F.Supp. at 588; see 20 C.F.R. 404.1512(a)(c); see also 42 U.S.C. 405(g).

Because Plaintiff bears the burden on appeal to show that the administrative decision was erroneous, general allegations of error will not support a claim that an ALJ's decision is unsupported by substantial evidence. Pugh v. Sec'y of Health, Educ. & Welfare, 448 F.Supp. 37, 41 (D. Kan. 1978). In this case, Plaintiff does not dispute the conclusions offered by the state agency medical consultants in calculating her mental residual functional capacity; she only contends that they should have had the benefit of the March 2001 "Emergency Behavioral Health Assessment" before

rendering an opinion. (Record No. 9, pp. 3-5.) As the Commissioner observes, however, the treatment received in March 2001 was almost a full year before Plaintiff's alleged onset date of February 1, 2002. (Record No. 10, pp. 6-7.) Moreover, Plaintiff's treatment notes from Mountain Comprehensive Care, dated April 2002 through July 2002, indicate that she demonstrated sustained psychological improvement following a second hospitalization in March 2002. (Tr. 201-207.) Those records document that Plaintiff was able to work full-time and live on her own during that time. (Tr. 201; 207.) The ALJ considered these records in conjunction with the state consultant assessments, the VE's opinion, and Plaintiff's own testimony before rendering his administrative decision. (Tr. 17; 19-20.) Thus, the ALJ's decision is supported by substantial evidence.

Plaintiff has not referenced any other evidence suggesting that her mental health condition deteriorated following her documented treatment at Mountain Comprehensive Care Center or that the state agents' mental residual functional capacity assessments were otherwise inaccurate. (See Record No. 9, pp. 3-5.) Plaintiff does not cite any evidence indicating that her psychological impairments would preclude adjustment to all work activity. (Id.) Most importantly, Plaintiff fails to address how this particular treatment record, the March 2001 "Emergency Behavior Health Assessment," would have affected the state consultants' calculations of

Plaintiff's mental residual functional capacity had the state agency consultants actually had access to such information. (See Record No. 9, pp. 3-5.) Plaintiff thus having failed to satisfy her burden of showing that the ALJ committed any error under applicable law, it shall be recommended that the decision of the Commissioner on this sole issue raised by Plaintiff be affirmed.

## IV.  CONCLUSION

Therefore, for the reasons set forth above, it is recommended that: the Defendant Commissioner's motion for summary judgment (Record No. 10) be granted; Plaintiff's motion for summary judgment (Record No. 9) be denied; Judgment be entered affirming the Commissioner's decision and dismissing this action with prejudice; and, that this action be stricken from the court's docket.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting, Inc. 236 F.Supp.2d 737, 749-750 (E.D. Ky. 2002).  General objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within ten (10) days after being served a copy thereof.  28 U.S.C. § 636(b)(1)(C); Rule 72(b),

Fed. R. Civ. P.

    Signed April 13, 2005.



Date of Entry and Service: